**CT Corporation**

**Service of Process Transmittal**
10/09/2018
CT Log Number 534196303

**TO:** Debra David, Paralegal
The TJX Companies, Inc.
770 Cochituate Rd
Framingham, MA 01701-4666

**RE:** **Process Served in Washington**

**FOR:** Sierra Trading Post, Inc.  (Domestic State: WY)



**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Weimin Chen, Pltf. vs. Sierra Trading Post, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | King County Superior Court, WA<br>Case # 182250196SEA |
| **NATURE OF ACTION:** | Complaint for consumer protection act |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Olympia, WA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/09/2018 at 11:47 |
| **JURISDICTION SERVED :** | Washington |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Daniel M. Hattis<br>HATTIS & LUKACS<br>P.O. Box 1645<br>Bellevue, WA 98009<br>650-980-1990 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/10/2018, Expected Purge Date: 10/15/2018<br><br>Image SOP<br><br>Email Notification, Debra David  debra_david@tjx.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | CT Corporation System<br>711 Capitol Way S.<br>Suite 204<br>Olympia, WA 98501<br>602-277-4792 |

Page 1 of  1 / DA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**Exhibit A**

1
2
3
4
5
6
7
8

## SUPERIOR COURT OF WASHINGTON
### FOR KING COUNTY

9
10
11

| WEIMIN CHEN | No. 18-2-25019-6 SEA |
| for Himself and All | |
| Others Similarly Situated, | **SUMMONS (20 DAYS)** |
| | |
| Plaintiff, | |
| | |
| v. | |
| | |
| SIERRA TRADING POST, INC., | |
| and DOES 1-20, inclusive, | |
| | |
| Defendants. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SUMMONS
PAGE 1 OF 2

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1   TO THE DEFENDANT: A lawsuit has been started against you in the above entitled

2   court by WEIMIN CHEN, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of

3   which is served upon you with this summons.

4   In order to defend against this lawsuit, you must respond to the complaint by stating your

5   defense in writing, and by serving a copy upon the person signing this summons within 20 days

6   after the service of this summons, excluding the day of service, or a default judgment may be

7   entered against you without notice. A default judgment is one where plaintiff is entitled to what

8   he asks for because you have not responded. If you serve a notice of appearance on the

9   undersigned person, you are entitled to notice before a default judgment may be entered.

10  You may demand that the plaintiff file this lawsuit with the court. If you do so, the

11  demand must be in writing and must be served upon the person signing this summons. Within 14

12  days after you serve the demand, the plaintiff must file his lawsuit with the court, or the service

13  on you of this summons and complaint will be void.

14  If you wish to seek the advice of an attorney in this matter, you should do so promptly so

15  that your written response, if any, may be served on time.

16  This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State of

17  Washington.

18  DATED this 4th day of October, 2018.

19  Presented by:
    HATTIS & LUKACS

20

21  By: _____

22  Daniel M. Hattis, WSBA # 50428
    HATTIS & LUKACS
23  P.O. Box 1645
    Bellevue, WA 98009
24  Telephone: (650) 980-1990
    Facsimile: (425) 412-7171
25  Email: dan@hattislaw.com

26  Attorneys for Plaintiff and the Proposed Class

27

28

SUMMONS
PAGE 1 OF 2

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1
2
3
4
5
6
7
8

## SUPERIOR COURT OF WASHINGTON
## FOR KING COUNTY

9
10
11

| | |
|---|---|
| 12 WEIMIN CHEN<br>for Himself and All<br>13 Others Similarly Situated, | No. _____ |
| 14 Plaintiff, | CLASS ACTION COMPLAINT FOR<br>DAMAGES, INJUNCTIVE AND |
| 15 v. | DECLARATORY RELIEF UNDER THE<br>CONSUMER PROTECTION ACT, RCW |
| 16 SIERRA TRADING POST, INC.,<br>and DOES 1-20, inclusive, | 19.86, AND THE WASHINGTON<br>COMMERCIAL CODE, RCW 62A.2-313 |
| 17 | |
| 18 Defendants. | |

19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 1 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY ............................................................... - 3 -

II.    PARTIES.......................................................................................................... - 3 -

III.   JURISDICTION AND VENUE ....................................................................... - 6 -

IV.    PLAINTIFF'S FACTUAL ALLEGATIONS .................................................. - 7 -

V.     REFERENCE PRICING OVERVIEW............................................................ - 10 -

VI.    LAWS PROHIBITING FALSE REFERENCE PRICING ............................... - 12 -

       A.   Advertising The Former Price Charged By That Retailer For That Same
            Product ..................................................................................................... - 12 -

       B.   Advertising The Price Charged By Other Retailers For That Same Product ...- 13 -

       C.   Advertising The Price Charged By That Retailer Or Other Retailers For A
            Similar Quality But Different Product ...................................................... - 14 -

VII.   COMMON FACTUAL ALLEGATIONS OF SIERRA TRADING POST'S
       UNLAWFUL SCHEME ................................................................................. - 15 -

VIII.  CLASS ACTION ALLEGATIONS................................................................. - 26 -

CAUSES OF ACTION ............................................................................................... - 28 -

COUNT I – Violation of the Washington Consumer Protection Act..................................... - 28 -

COUNT II – Breach of Express Warranty .......................................................................... - 30 -

COUNT III – Permanent Public Injunctive Relief............................................................... - 31 -

COUNT IV – Uniform Declaratory Judgments Act ............................................................ - 33 -

PRAYER FOR RELIEF ............................................................................................. - 35 -

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 2 OF 37

HATTIS & LUKACS
P O BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1      Plaintiff WEIMIN CHEN, demanding trial by jury as to all issues so triable in a separate

2    document filed herewith, alleges as follows, on personal knowledge and/or on information and

3    belief, against Defendant Sierra Trading Post, Inc. ("Sierra Trading Post"), and Defendants Does

4    1 through 20, inclusive:

5    **I.**      **INTRODUCTION AND SUMMARY**

6      1.     The popular retailer Sierra Trading Post engages in false and misleading

7    advertising which harms Washington State consumers.

8      2.     Defendant Sierra Trading Post, Inc. ("Sierra Trading Post"), is a discount retailer

9    which sells men's and women's apparel, outdoor gear, sporting goods and home fashions directly

10   to consumers. While Sierra Trading Post operates about 30 brick-and-mortar retail stores

11   nationwide (including two Washington State stores, in Bellingham and Silverdale), Sierra Trading

12   Post generates the bulk of its revenues through sales on its website and from its downloadable

13   mobile application ("mobile app"), which are utilized by consumers nationwide, including in

14   Washington State.

15     3.     When customers visit the website www.sierratradingpost.com or browse using the

16   Sierra Trading Post downloadable mobile app, the customers see clothes, camping gear and

17   outdoor apparel being sold for what Sierra Trading Post claims is a significant discount.

18     4.     Sierra Trading Post makes ubiquitous use of "reference prices," which are the

19   prices by which the retailer communicates the former price or value of the product, and thus the

20   size of the discount being offered.

21     5.     Almost every item offered by Sierra Trading Post on its website, through its

22   mobile app, and in its retail stores is advertised using a reference price (variously called the

23   "Compare at" price or the "retail price)." But most of the reference prices displayed by Sierra

24   Trading Post are false, deceptive or misleading because the reference prices are not the former

25   price or market price of that particular product being sold.

26     6.     For example, but without limitation, Sierra Trading Post's advertising contains

27   reference prices which are not the price at which that same item was offered or sold in appropriate

28   quantities by other retailers in the relevant market, and likewise are not Sierra Trading Post's

CLASS ACTION COMPLAINT FOR DAMAGES               HATTIS & LUKACS
AND INJUNCTIVE AND DECLARATORY RELIEF          P.O. BOX 1645
PAGE 3 OF 37                                  BELLEVUE, WA 98009
                                          (650) 980-1990

1   previous offering price for that item. In some instances, Sierra Trading Post's reference prices are

2   estimates. lack evidence, or are simply made up. Many items have never been sold at the

3   reference price from which the item is supposedly discounted.

4        7.     Sierra Trading Post claims and represents to consumers that it is able to offer such

5   terrific "deals," as represented by discounts from its reference prices, because it supposedly buys

6   excess inventory from other retailers or manufacturers at cut-rate prices. "So when a

7   manufacturer overproduces or other stores overbuy, we swoop in, negotiate the lowest possible

8   price, and pass the savings on!"[1] Sierra Trading Post identifies most of the products it offers as a

9   supposed "Closeout," which Sierra Trading Post defines as being "last year's model or color...

10   Closeouts are often a high percentage off the retail price."

11       8.     But this carefully crafted image of a discounter who primarily sells close-outs and

12   excess inventory which were previously offered by other retailers at the advertised "retail price"

13   or "Compare at" price, is a lie. For example, Sierra Trading Post is still offering on its website, 3

14   years later, the very same Marmot Optima Gore-Tex PacLite Jacket that Plaintiff Weimin Chen

15   purchased on the Sierra Trading Post website in November 2015. And Sierra Trading Post is still,

16   3 years later, falsely advertising the jacket as a "Closeout" which was "last year's model or

17   color." Meanwhile, Sierra Trading Post deceptively advertises such items by displaying reference

18   prices at which no retailer has offered the products in the recent past.

19       9.     In fact, many if not most of the products offered by Sierra Trading Post were

20   specially ordered by and exclusively manufactured for Sierra Trading Post, and have never been

21   offered by other retailers at all, let alone at the invented "Compare at" or "retail" reference price.

22       10.    Sierra Trading Post also advertises many products by displaying the reference

23   price of similarly styled but in fact different and often higher quality products (e.g., Sierra

24   Trading Post's lower-priced products may have lower quality materials and workmanship). These

25   are unlawful apples-to-oranges comparisons.

26

27

---

[1] *See* "Sierra Trading Post: How we do it" at https://www.sierratradingpost.com/lp2/how-we-do-
28  it.

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 4 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

11.     Sierra Trading Post's fraudulent advertising scheme harms Washington consumers like Plaintiff Weimin Chen by causing them to pay more than they otherwise would have paid and to buy more than they otherwise would have bought. Customers do not enjoy the actual discounts Sierra Trading Post promised them, and the items are not in fact worth the amount that Sierra Trading Post represents to them.

12.     Sierra Trading Post's false reference price advertising also harms all of its customers by fraudulently increasing demand for all of its products, enabling Sierra Trading Post to charge all of its customers higher prices than it otherwise could have charged for its products and to generate more sales that it otherwise would have generated.

13.     Fortunately for Washington State consumers, the Court has been equipped by the Legislature with multiple tools for remedying Sierra Trading Post's unlawful behavior. In addition to actual damages (which can be trebled) and attorneys' fees and court costs, this Court can and should enter a permanent injunction which polices Sierra Trading Post's use of reference prices in its advertising.

## II.   PARTIES

14.     Plaintiff Weimin Chen is a citizen of the United States of America and an individual and a natural adult person who currently resides and who at all relevant times in the past resided in the City of Bellevue, King County, Washington State.

15.     Defendant Sierra Trading Post, Inc., is a corporation chartered under the laws of the State of Wyoming which currently has and at all relevant times in the past has had its headquarters, executive office, principal place of business or nerve center in Laramie County, State of Wyoming.

16.     Defendants Doe 1 through Doe 20, inclusive, aided and/or abetted Defendant Sierra Trading Post, Inc., in such a manner that Doe 1 through Doe 20, inclusive, are each directly, contributorily, vicariously, derivatively and/or otherwise liable for the acts or omissions of Defendant Sierra Trading Post, Inc. Plaintiff is currently unaware of the true identities of Doe 1 through Doe 20, inclusive; Plaintiff anticipates that, upon learning the true identities of any of

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 5 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1   Doe 1 through Doe 20, inclusive, Plaintiff will either freely amend the operative complaint or
2   request leave from the Court to amend the operative complaint.

3   **III.    JURISDICTION AND VENUE**

4          17.    This Court has subject matter jurisdiction over this civil action pursuant to,
5   without limitation, Section 6 of Article IV of the Washington State Constitution (Superior Court
6   jurisdiction, generally), Section 7.24.146 of the Revised Code of Washington (court of record
7   jurisdiction over prayers for declaratory relief) and Section 19.86.090 of the Revised Code of
8   Washington (Superior Court jurisdiction over Consumer Protection Act claims).

9          18.    This Court has personal jurisdiction over each of the defendants pursuant to,
10  without limitation, Revised Code of Washington section 4.28.185. Defendant Sierra Trading Post,
11  Inc., has, without limitation, transacted business within the State of Washington (including,
12  without limitation, operating the www.sierratradingpost.cm website and mobile app and operating
13  brick-and-mortar Sierra Trading Post stores in Bellingham, Washington, and in Silverdale,
14  Washington), and/or has committed tortious acts within the State of Washington (as alleged,
15  without limitation, throughout this Complaint).

16         19.    With regard to the cause of action brought pursuant to the Washington Consumer
17  Protection Act, this Court has personal jurisdiction over each of the defendants pursuant to
18  Revised Code of Washington section 19.86.160. Defendant Sierra Trading Post, Inc., has engaged
19  in conduct in violation of Chapter 19.86 of the Revised Code of Washington which has had an
20  impact in Washington State which said chapter reprehends.

21         20.    Venue is proper in King County Superior Court because, without limitation,
22  Plaintiff resides in King County; a significant portion of the acts giving rise to this civil action
23  occurred in King County; Defendant Sierra Trading Post, Inc., intended to and did have a
24  substantial and foreseeable effect on trade or commerce in King County; the acts and omissions
25  of Defendant Sierra Trading Post, Inc., pled herein affected the prices advertised and paid and the
26  volume of sales or revenues obtained from King County; and/or Defendant Sierra Trading Post,
27
28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 6 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1   Inc., knew or expected that their advertisements would be seen and/or acted upon inside King

2   County.

3       21.     Within the jurisdiction of King County Superior Court, this civil action is assigned

4   to the Seattle Case Assignment Area because, without limitation, no defendant resides for these

5   purposes in King County, and Plaintiff resides in the City of Bellevue, King County.

6   **IV.   PLAINTIFF'S FACTUAL ALLEGATIONS**

7       22.     Plaintiff Weimin Chen has purchased many products from Sierra Trading Post,

8   always through the www.sieraatradingpost.com website.

9       23.     From December 1, 2010, through January 19, 2018, Mr. Chen placed 34 orders for

10  90 separate items, spending a total of $3,314.46. Sierra Trading Post advertised and promised Mr.

11  Chen that the 90 items were discounted an average of 60% from their regular prices, aggregating

12  to a collective total advertised savings of $4,722.32.

13      24.     For example, on May 2, 2015, Mr. Chen placed order number E25072854 on the

14  Sierra Trading Post website for the following 5 items:

15          • Montrail Fairhaven Trail Running Shoes (For Men) Item #5528N-01-9.5-M
            • The North Face Greenwater Sport Sandals (For Men) Item #6403C-01-12-M
16          • The North Face Horizon Betty Capris (For Women) Item #6405J-04-2-R
17          • Adidas Swim Shirt - Short Sleeve (For Men) Item #9094P-01-L
18          • New Balance 610V3 Trail Running Shoes (For Men) Item #8388D-02-11.5-2E

19  Sierra Trading Post offered these 5 items for a total of $128.21, at an advertised dollar amount

20  "savings" of $230.74 and at an advertised 64% off.

21      25.     For example, on November 1, 2015, Mr. Chen placed order number E27183533 on

22  the Sierra Trading Post website for the following 3 items:

23          • Marmot Optima Gore-Tex® PacLite® Jacket - Waterproof (For Men), Item
              #3969D-07-M
24          • Carhartt Tipton Jeans - Relaxed Fit, Straight Leg, Factory Seconds (For Men),
              Item #8744P-01-32-30
25          • Zoot Sports Solana Running Shoes (For Men), Item #9212K-01-11-M

26  Sierra Trading Post offered these 3 items for a total of $144.78, at an advertised dollar amount

27  "savings" of $185.21 and at an advertised 56% off.

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 7 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

26.     For example, on November 15, 2015, Mr. Chen placed order number E27383630 on the Sierra Trading Post website for the following 3 items:

- Mizuno Wave Paradox Running Shoes (For Men), Item #9825P-01-12-2E
- Mizuno Wave Hayate Trail Running Shoes (For Women), Item #9825T-01-7-B
- Mizuno Wave Creation 16 Running Shoes (For Women), Item #9825R-01-6.5-B

Sierra Trading Post offered these 3 items for a total of $139.88, at an advertised dollar amount "savings" of $265.09 and at an advertised 65% off.

27.     For each of the 90 items in these 34 orders, Mr. Chen viewed and relied on Sierra Trading Post's reference price and discount percentage representations, including: (1) the "Compare at $xx" reference price representations on the list pages containing multiple products; (2) the "Compare at $xx" and "Save xx%" representations on the individual product webpages; (3) the "Save xx%" discount representations in the shopping cart; and (4) the "Your savings so far: $xxx.xx (xx%) on this order compared to retail prices!" dollar and percentage claimed discounts.

28.     Mr. Chen reasonably believed and understood that the advertised higher reference price, i.e., the "Compare at $xx" price, and the advertised dollar and percentage savings from that reference price, represented the price at which that *specific item* (and not a different or supposedly similarly styled item) was currently or in the recent past offered by representative retail stores in the local marketplace or by Sierra Trading Post itself.

29.     With regard to all of his purchases from Sierra Trading Post, Mr. Chen believed and understood the reference prices and the "Compare at" and "retail price" terminology to be truthful, consistent and lawful.

30.     Contrary to Sierra Trading Post's representations, for at least some of the items purchased by Mr. Chen, the items were never previously offered by any retailer at the reference price. For at least some of the items purchased by Mr. Chen, no retailer offered the items for sale at the reference price in an appropriate quantity and/or for an appropriate duration. For at least some of the items purchased by Mr. Chen, the reference prices were estimates or simply made up.

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 8 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1      31.    The advertised reference prices and discounts were material representations and

2    inducements to Mr. Chen's purchase of the allegedly discounted products and to Mr. Chen's

3    decision to become a repeat customer of Sierra Trading Post.

4      32.    Mr. Chen reasonably relied on Sierra Trading Post's material misrepresentations

5    concerning the purported discounts on, and the nature of, these items.

6      33.    If Mr. Chen had known the truth, he would have acted differently.

7      34.    The false or misleading nature of Sierra Trading Post's discounts and reference

8    pricing was, at all relevant times, masked or concealed or hidden such that an ordinary consumer

9    exercising reasonable care under all of the circumstances would not have known of or discovered

10    their false or misleading nature.

11      35.    As a direct and proximate result of Sierra Trading Post's acts and omissions, Mr.

12    Chen was harmed, suffered an injury in fact and has lost money or property.

13      36.    Sierra Trading Post's false discount advertising harmed Mr. Chen by causing him

14    to pay more than he otherwise would have paid and to buy more than he otherwise would have

15    bought. Mr. Chen did not enjoy the actual discounts Sierra Trading Post promised him, and the

16    items were not in fact worth the amount that Sierra Trading Post had represented to him.

17      37.    Sierra Trading Post's false reference pricing scheme harmed all of its customers by

18    fraudulently increasing demand for all of its products, enabling Sierra Trading Post to charge all

19    of its customers higher prices than it otherwise could have charged for its products and to

20    generate more sales that it otherwise would have generated.

21      38.    Mr. Chen has a legal right to rely, now and in the future, upon the truthfulness and

22    accuracy of Sierra Trading Post's representations regarding discounts or reference prices. Mr.

23    Chen will be harmed if, in the future, Mr. Chen is left to guess as to whether Sierra Trading Post

24    is providing accurate reference prices and stated discounts.

25      39.    If Mr. Chen were to order again from Sierra Trading Post without Sierra Trading

26    Post changing the unlawful conduct alleged herein, Mr. Chen would be harmed on an ongoing

27    basis and/or would be harmed once or more or on an ongoing basis in the future.

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 9 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1    40.   On July 27, 2018, Mr. Chen served a pre-litigation notice letter upon Sierra

2    Trading Post, Inc., detailing his allegations and demanding that Sierra Trading Post take

3    corrective action within 30 days.

4    41.   Sierra Trading Post received the pre-litigation notice letter on July 30, 2018. In the

5    thirty calendar days following July 30, 2018, Sierra Trading Post did not comply with any of the

6    demands made in Mr. Chen's letter.

7    42.   At all relevant times, Plaintiff Chen had no knowledge of the existence or content

8    of Sierra Trading Post's Terms of Use.

9    43.   Plaintiff Chen never assented or agreed to Sierra Trading Post's Terms of Use.

10   44.   At all relevant times, Mr. Chen did not see or know of the existence of Sierra

11   Trading Post's "Comparison Pricing" disclosure.

12   45.   Plaintiff Chen brings each cause of action in this Complaint on behalf of himself

13   individually, on behalf of the Class (defined below) and as a private attorney general on behalf of

14   the general public.

15   **V.   REFERENCE PRICING OVERVIEW**

16   46.   A "reference price" is a stated price presented alongside the retailer's actual

17   offering price, which retailers use to convince consumers that they are getting a good deal.

18   47.   Over the past forty years, a substantial body of research on the effects of reference

19   prices (also referred to in the relevant literature as "advertised reference prices," "external

20   reference prices" and "comparative prices") shows that reference prices: (i) impact consumers'

21   perceptions of the value of the sales deal; (ii) impact consumers' willingness to make the

22   purchase; (iii) decrease consumers' intentions to search for a lower price; and (iv) allow sellers

23   that utilize reference prices to charge higher prices and make increased sales. Consumers form an

24   "internal reference price," also known as an "expected price," an "aspirational price" (a price the

25   consumer would like to pay) or a "normative price" (a price that is "fair"). Consumers store and

26   retrieve the "internal reference price" from memory to judge the merits of a specific price offer.

27   Even where an advertised reference price is exaggerated and not itself completely believed,

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 10 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1    perceptions of value increase in comparison to a promotion with no advertised reference price.

2    Thus, retailers' use of reference prices influences consumers' "internal reference price" and

3    subsequently, increases consumers' willingness to purchase the product.[2]

4         48.    When a reference price is bona fide and truthful, it may help consumers in making

5    informed purchasing decisions. In contrast, consumers are harmed when merchants advertise their

6    products with inflated and false reference prices, because the false reference prices deceive

7    consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in

8    purchasing decisions based on false pretenses.

9         49.    False reference pricing causes consumers to pay more than they otherwise would

10   have paid for products. False reference pricing also fraudulently increases consumer demand for

11   products, enabling retailers to charge higher prices than they otherwise could have charged.

12        50.    Beyond the adverse impact upon consumers' welfare, the practice of employing

13   false reference pricing also negatively affects the integrity of competition in retail markets. A

14   retailer's use of false reference prices constitutes an unfair method of competition, injuring honest

15   competitors that sell the same or similar products, or otherwise compete in the same market, using

16   valid and accurate reference prices. Businesses who play by the rules — and the investors in those

17   businesses — are penalized if the unlawful advertising practices of their competitors go

18   unchecked.

19

20   [2] See, e.g., Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 11 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

## VI.   LAWS PROHIBITING FALSE REFERENCE PRICING

51.     "The [Consumer Protection Act], first enacted in 1961, is Washington's principal consumer protection and antitrust statute. The consumer protection provisions of the CPA were modeled after Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45." Washington Pattern Jury Instruction No. 310.00 (Consumer Protection Act — Introduction).

52.     The Washington Consumer Protection Act is codified as Chapter 19.86 of the Revised Code of Washington. Its principal substantive provision declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. RCW 19.86.020. "Private rights of action may now be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. RCW 19.86.090. A private plaintiff may be eligible for treble damages ... Private consumers may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights. RCW 19.86.090." Washington Pattern Jury Instruction No. 310.00 (Consumer Protection Act — Introduction).

53.     The Washington Legislature has declared the purpose and intent of the Consumer Protection Act: "The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters ..." RCW 19.86.920.

### A.   Advertising The Former Price Charged By That Retailer For That Same Product.

54.     With regard to the practice of a retailer advertising the former price charged by that retailer for that same product, the Federal Trade Commission ("FTC") states:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial,

HATTIS & LUKACS
P O BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1  inflated price was established for the purpose of enabling the subsequent offer of a
large reduction -- the "bargain" being advertised is a false one; the purchaser is not
2  receiving the unusual value he expects. In such cases, the 'reduced price' is, in
3  reality, probably just the seller's regular price.

4  16 C.F.R § 233.1(a) (Emphasis added).

5     55.    When a retailer is advertising its own former price for that same product, the

6  retailer may lawfully advertise or display the former price with a slash through it, the percentage

7  of discount (e.g., "xx% OFF") or statements such as "You Save: $xx" or "You Save: xx%." *See,*

8  *e.g.,* WAC § 308-66-152 (regulation, promulgated under the Consumer Protection Act, regarding

9  the advertising of former prices of cars).

10    **B.     Advertising The Price Charged By Other Retailers For That Same Product.**

11    56.    With regard to the practice of a retailer advertising, as the reference price, the price

12  charged by other retailers for that same product, the Federal Trade Commission states:

13        (a) Another commonly used form of bargain advertising is to offer goods at prices
lower than those being charged by others for the same merchandise in the
14        advertiser's trade area (the area in which he does business). This may be done
either on a temporary or a permanent basis, but in either case the advertised higher
15        price must be based upon fact, and not be fictitious or misleading. Whenever an
advertiser represents that he is selling below the prices being charged in his area
16        for a particular article, he should be reasonably certain that the higher price he
advertises does not appreciably exceed the price at which substantial sales of the
17        article are being made in the area - that is, a sufficient number of sales so that a
consumer would consider a reduction from the price to represent a genuine bargain
18        or saving. Expressed another way, if a number of the principal retail outlets in the
area are regularly selling Brand X fountain pens at $10, it is not dishonest for
19        retailer Doe to advertise: "Brand X Pens, Price Elsewhere $10, Our Price $7.50".
20

21        (b) The following example, however, illustrates a misleading use of this
advertising technique. Retailer Doe advertises Brand X pens as having a "Retail
22        Value $15.00, My Price $7.50," when the fact is that only a few small suburban
outlets in the area charge $15. All of the larger outlets located in and around the
23        main shopping areas charge $7.50, or slightly more or less. The advertisement here
would be deceptive, since the price charged by the small suburban outlets would
24        have no real significance to Doe's customers, to whom the advertisement of
"Retail Value $15.00" would suggest a prevailing, and not merely an isolated and
25        unrepresentative, price in the area in which they shop.
26

16 C.F.R § 233.2(a),(b) (Emphasis added.).

27

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 13 OF 37                                    HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

57.     When a retailer is advertising the price charged by other retailers for the same product, the retailer may lawfully use the terms "Compare" or "Compare at" in its advertising. See, e.g., People v. Overstock.Com., Inc., 12 Cal. App. 5th 1064, 1080 (2017).

**C.     Advertising The Price Charged By That Retailer Or Other Retailers For A Similar Quality But Different Product.**

58.     With regard to the practice of a retailer advertising, as the reference price, the price charged by that retailer or other retailers for a similar quality but different product, the Federal Trade Commission states:

> A closely related form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality - in other words, comparable or competing merchandise - to that being advertised. Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area. The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area. For example, retailer Doe advertises Brand X pen as having "Comparable Value $15.00". Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive.

16 C.F.R § 233.2(c) (Emphasis added).

59.     When a retailer is advertising the price charged for a similar quality but different product, the retailer may lawfully use a term like "Compare Similar" which signals the nature of the comparison. See People v. Overstock.Com., Inc., 12 Cal. App. 5th 1064, 1080 (2017). However, in such a situation, the retailer is engaging in false, deceptive or misleading advertising if the retailer uses the terms "Compare" or "Compare at," which the ordinary consumer exercising reasonable care would instead understand to mean the former price for that identical product. Ibid. See also WAC § 246-881-020 (regulation, promulgated under the Consumer Protection Act, forbidding the advertising of generic drugs in any manner which implies that the brand name drug is being offered for sale).

60.     Courts have acknowledged the misleading effect that false reference prices have on customers. For example, the Ninth Circuit in Hinojos v. Kohl's Corp., explained:

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 14 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

> Most consumers have, at some point, purchased merchandise that was marketed as being "on sale" because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher "original" price in order to induce customers to purchase merchandise at a purportedly marked-down "sale" price. Because such practices are misleading — and effective — the California legislature has prohibited them.

718 F.3d 1098, 1101, 1105-06 (9th Cir. 2013) (citing Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. of Pub. Policy & Mktg. 52, 55 (Spring 1992)).

61.    (To be clear, Plaintiff Chen is bringing all of his claims in this Complaint under state law. He is bringing no claims under federal law, which is being cited, as per RCW 19.86.920, for purposes of interpretation.)

## VII.    COMMON FACTUAL ALLEGATIONS OF SIERRA TRADING POST'S UNLAWFUL SCHEME

62.    Defendant Sierra Trading Post, Inc. ("Sierra Trading Post"), is a discount retailer which sells men's and women's apparel, outdoor gear, sporting goods and home fashions directly to consumers. While Sierra Trading Post operates about 30 brick-and-mortar retail stores nationwide (including two Washington State stores, in Bellingham and Silverdale), Sierra Trading Post generates the bulk of its revenues through its website and from its downloadable mobile app.

63.    Sierra Trading Post ships more than 7 million pieces of merchandise each year. Sierra Trading Post ships more than 7,000 items per day and, during the Christmas season, more than 20,000 items per day. At a minimum, about 2.27% of Sierra Trading Post's sales were made to consumers in Washington State (reflecting the fact, according to the Census Bureau, that Washington's 2017 population of 7,405,743 represents 2.27% of the United States' 2017 population of 325,719,178). In reality, the percentage of Sierra Trading Post's customers who are Washington State residents is higher due to the outdoor lifestyle and relative affluence of Washingtonians.

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 15 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

64.     When customers visit the website www.sierratradingpost.com or browse the Sierra Trading Post mobile app, they see clothes, camping gear and outdoor apparel being sold for what Sierra Trading Post claims is a significant discount.

65.     Sierra Trading Post makes ubiquitous use of "reference prices," which are the prices by which the retailer communicates the former price or value of the product, and thus the size of the discount being offered. Almost every item offered by Sierra Trading Post on its website, through its mobile app, and in its retail stores is advertised using a reference price.

66.     Sierra Trading Post claims and represents to consumers that it is able to offer such terrific "deals," as represented by discounts from its reference prices, because it primarily buys excess inventory from other retailers or manufacturers at cut-rate prices. On a page on its website called "Sierra Trading Post: How we do it", available at https://www.sierratradingpost.com/lp2/how-we-do-it, Sierra Trading Post spins the tale. "So when a manufacturer overproduces or other stores overbuy, we swoop in, negotiate the lowest possible price, and pass the savings on!" "Never the same selection twice." *Id.* "The store managers don't even know what's coming until they throw open the delivery truck doors!" *Id.* Sierra Trading Post identifies most of the products it offers as a supposed "Closeout," which Sierra Trading Post defines as being "last year's model or color… Closeouts are often a high percentage off the retail price."

67.     But this carefully crafted image of a discounter who primarily sells close-outs and excess inventory which were previously and regularly sold at the advertised "retail price" or "Compare at" reference price is a lie.

68.     Sierra Trading Post engages in at least four distinct but interrelated forms of false advertising with regard to its reference prices.

69.     **False Reference Prices In General.** Almost every item sold by Sierra Trading Post in its retail stores, on its website and through its mobile app is advertised using a reference price. But most of the reference prices displayed by Sierra Trading Post are false, deceptive or misleading in the sense that the reference prices are not the former price, market price, or value of that particular product being sold. For example, but without limitation, Sierra Trading Post's

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1  advertising contains reference prices which are <u>not</u> the price at which that same item was sold in

2  appropriate quantities by other retailers in the relevant market or in the past by Sierra Trading

3  Post. In some instances, Sierra Trading Post's reference prices are estimates, lack evidence, or are

4  simply made up. Certain items have never been offered or sold at the price from which the item is

5  supposedly discounted.

6      70.     **Exclusive, Specially Manufactured Items With False Reference Prices.** Certain

7  products are specially ordered by and exclusively manufactured for Sierra Trading Post and are

8  only available for purchase from Sierra Trading Post. Sierra Trading Post advertises some of

9  these items by displaying reference prices at which Sierra Trading Post never offered the items

10 and/or did not offer the items for an appropriate quantity or for an appropriate period of time.

11     71.     **Reference Prices Using Different-Quality Comparisons.** Sierra Trading Post

12 advertises certain products by displaying the reference price of similarly styled but in fact

13 different and higher quality products (e.g., Sierra Trading Post's lower-priced products may have

14 lower quality materials and workmanship). These are unlawful apples-to-oranges comparisons.

15     72.     **"Compare at" Ambiguity.** Sierra Trading Post uses the term "Compare at" to

16 advertise almost every item for sale on its website and mobile app. By law, the term "Compare

17 at" must refer to the former price or market price for *that exact same item*. But Sierra Trading

18 Post uses the term indiscriminately and deceptively. Sometimes, as noted above, Sierra Trading

19 Post uses "Compare at" to refer to a price at which the item was never offered or was not offered

20 in an appropriate quantity for an appropriate period of time. Sometimes, Sierra Trading Post uses

21 "Compare at" to refer to a price at which another retailer may have offered a similar-looking but

22 different and typically higher-quality product, in comparison to the lower-quality product being

23 offered by Sierra Trading Post. It is impossible for an ordinary consumer exercising reasonable

24 care to know what "Compare at" means with regard to any particular item; Sierra Trading Post's

25 use of "Compare at" is hopelessly confusing. Sierra Trading Posts' hidden "Comparison Pricing"

26 disclosure, even if it were seen by a consumer, is no help to the consumer, because it defines

27 "Compare at" and "retail price" in such an unnatural way as to render the terms virtually

28 meaningless because they can refer to multiple different types of comparisons.

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 17 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

73.   The site's standard practice is to display the price of a product in prominent black print and then to display, to the right of the price, a statement in smaller light-gray font which reads "Compare at" followed by a price. The "Compare at" price is always substantially higher than the price at which the Sierra Trading Post website is offering the product for sale. This is an example taken from the Sierra Trading Post website on October 1, 2018:



CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 18 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

74.    When a customer clicks on one specific product on the website or the mobile app, that product's individual page appears. To the right of the product is a line which provides the current price, which is followed by the phrase "Save xx%", which is followed by the phrase in black normal text "Compare at $xx.xx." Most items are also described as "Closeouts" which are "last year's model or color" that are "a high percentage off retail prices." Below is an example taken from the Sierra Trading Post website on October 1, 2018:



CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 19 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

75.      Despite Sierra Trading Post's representations to the contrary, this item, as is typical of other offerings on the website, was not previously offered at the ($200.00) reference price in the recent past if ever, and is not a "Closeout" which is "last year's model or color." This identical Marmot Optima Gore-Tex PacLite Jacket was purchased 3 years earlier by Plaintiff Weimin Chen from Sierra Trading Post's website, and has been perpetually, and exclusively, offered by Sierra Trading Post since then as a continually stocked product, always offered far below $200.00. Sierra Trading Post's representations that the jacket was previously and regularly sold at the advertised $200.00 "retail price" or "Compare at" reference price is a lie. After a customer adds a product to the online shopping cart, Sierra Trading Post continues to make false representations that the advertised reference prices represent the retail price at which the product was regularly offered. During shopping cart check-out process, Sierra Trading Post states: "Your savings so far: $xx.xx (xx%) on this order compared to retail prices!" Below is a shopping cart example taken from the Sierra Trading Post website on October 1, 2018:



CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 20 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

76.    If the consumer leaves a product in the shopping cart, then Sierra Trading Post

sends a reminder email, urging the customer to quickly come back and purchase the item because

the item is "Going Fast" and is "Still Here But Not For Long."  See the email sent by Sierra

Trading Post on October 2, 2018, below:



CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 21 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1   77. The representations and statements in this email that the product is "Going Fast"

2 and will be sold out soon are lies. In fact, this "Going Fast" item is the very same Marmot Optima

3 Gore-Tex PacLite Jacket that was purchased <u>3 years earlier</u> by Plaintiff Weimin Chen from Sierra

4 Trading Post's website, and which has been continuously stocked and re-stocked by Sierra

5 Trading Post. Sierra Trading Post makes these false representations to buttress its carefully

6 crafted but false narrative that it is a discounter with limited-time clearance offerings of products

7 that it recently purchased at close-out from other retailers and manufacturers.

8   78. Unfortunately for Washington State consumers, the way in which Sierra Trading

9 Post is advertising its discounts is false, misleading or deceptive.

10   79. The law is simple and clear: If a retailer uses reference prices in its advertising

11 (which can include newspaper or television ads, price tags, in-store displays, or the text

12 promoting an item on the retailer's website or mobile app), then the reference prices cannot be

13 false, deceptive or misleading. But Sierra Trading Post has broken that law.

14   80. These many types of false or misleading reference prices used by Sierra Trading

15 Post permeate the customer experience, especially for customers who purchase products thought

16 the www.sierratradingpost.com website or the mobile app.

17   81. Based on information and belief, Sierra Trading Post engages in the same form of

18 false advertising in its retail stores, including its two retail stores in Washington State. For

19 example, and without limitation, the Sierra Trading Post stores prominently display signs offering

20 large but false, deceptive or misleading discounts from inflated reference prices which suffer

21 from the same or similar defects as do the online and mobile app advertisements.

22   82. Sierra Trading Post attempts to exculpate itself from its deceptive scheme with a

23 hidden disclaimer which is intentionally designed to ensure that no customers actually see it. The

24 disclaimer is accessible from only two places: (1) from the website footer, by clicking on a small

25 link labeled "Comparison Pricing" which is adjacent and buried next to 43 other similar looking

26 small links; and (2) from the individual product page, by clicking on plain black text labeled

27 "Compare at" adjacent to the price which gives absolutely no indication it is a hyperlink, but

28 when it is clicked, causes a popup dialog box to appear with a description of the comparison

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 22 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1  pricing policy. Below is a screenshot demonstrating Sierra Trading Post's intentional hiding of

2  the link to the comparison pricing policy on the individual product webpage taken on October 1,

3  2018 (the presentation is substantially similar on the desktop website, mobile website, and mobile

4  app):



5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  To the right of product, the price $119.99 is listed in bold text. To the right of that, there is bold

21  orange text stating "Save 40%". To the right of that is black, thin text stating "Compare at

22  $200.00."

23        83.      There is absolutely no indication that the phrase "Compare at $200.00" is a

24  hyperlink (which when clicked opens a popup dialog box describing Sierra Trading Post's

25  comparison pricing policy). The display of this "Compare at $xxx.xx" hyperlink violates all

26  Internet norms regarding the presentation of a hyperlink. The text is black, not blue or some other

27  color. The text is not underlined. The text is not bolded. The hidden link is not presented with an

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 23 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1   asterisk or other indicator that a click will lead to additional information, and is not presented

2   with an "i" or other graphic noting that additional information is available with a click. Sierra

3   Trading Post has intentionally designed this link to ensure that no ordinary consumer exercising

4   reasonable care would realize it was a hyperlink, let alone click on it. Discovery will show that

5   virtually no customers who purchase or have purchased products from Sierra Trading Post have

6   clicked on the hidden link let alone read the resulting pop-out dialog box. The hidden link appears

7   to be merely a bad-faith attempt by Sierra Trading Post to exculpate itself from its deceptive

8   pricing scheme.

9          84.    Meanwhile, even if an ordinary consumer exercising reasonable care were to read

10   Sierra Trading Post's comparison pricing definition, the consumer would still have no clear

11   understanding of what the "Compare at" and "retail price" reference price representations mean.

12   The pricing policy text is intentionally ambiguous. The hidden disclosure reads as follows:

13          Many of our price tags include comparison prices, which are references to regular
            retail prices of the same or similar items at full-price department or specialty
14          retailers. Where identical items are not available, we compare to products of a
            similar type, quality and style. Prices vary among other sellers and change over
15          time, but our buying staff's goal is always to provide you with a useful comparison
            based on prices at which we believe substantial sales of the same or a similar item
16          have been made at full-price department or specialty retailers in the area or online.
            Our mission is always to bring you and your family exceptional value every day –
17          it is the foundation of our business.

18          85.    Sierra Trading Post appears to be attempting to define "Compare at" and "retail

19   price" in such an unnatural way as to render the terms virtually meaningless. Sierra Trading Post

20   defines its reference pricing terms in a way contrary to the dictionary definitions of "Compare at"

21   and "retail price." Sierra Trading Post's comparison pricing policy is also directly contrary to the

22   standards and definitions in the FTC guidelines, by which the Washington State legislature has

23   stated that Washington courts should be guided when construing the Washington Consumer

24   Protection Act. *See* RCW 19.86.920; 16 C.F.R § 233.1 *et al.*

25          86.    Just as virtually no consumers have knowledge of or view Sierra Trading Post's

26   pricing policy disclosure, similarly very few (at best) who purchase products from Sierra Trading

27   Post's website have knowledge of the existence or content of Sierra Trading Post's Terms of Use.

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 24 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1   Customers who purchase from the Sierra Trading Post mobile website or mobile app are not

2   presented with and are not required to assent to the Terms of Use. Customers who purchase from

3   the Sierra Trading Post desktop website do not assent to the Terms of Use because, without

4   limitation, the "browsewrap" Terms of Use provided by Sierra Trading Post to desktop website

5   users is inconspicuous, does not provide actual or constructive notice, and would not be seen by

6   the ordinary consumer exercising reasonable care.

7          87.    The false discounts and false reference price representations by Sierra Trading

8   Post were material to Washington consumers' decision to purchase each product. Because of the

9   "Compare at" and "retail price" reference price representations and the stated percentage and

10  dollar discounts, Washington consumers reasonably believed they would be enjoying a significant

11  discount if they purchased these products, and consumers purchased these products from Sierra

12  Trading Post on the basis of these representations in order to enjoy the stated discounts.

13         88.    Sierra Trading Post advertised inflated reference prices in order to make

14  consumers think the products were worth much more than they actually were. Sierra Trading Post

15  advertised fraudulent reference prices in order to trick its customers into paying more than they

16  otherwise would have paid.

17         89.    Additionally, Sierra Trading Post falsely represented that it is a discounter who

18  primarily sells close-outs and excess inventory, in order to further deceive customers into

19  believing that its products were previously and/or regularly offered at the advertised "retail price"

20  or "Compare at" price.

21         90.    The false or misleading nature of Sierra Trading Post's discounts and reference

22  pricing was, at all relevant times, masked or concealed or hidden such that an ordinary

23  Washington consumer exercising reasonable care under all of the circumstances would not have

24  known of or discovered their false or misleading nature.

25         91.    As a direct and proximate result of Sierra Trading Post's acts and omissions, all

26  Washington consumers who have purchased a product from Sierra Trading Post that was

27  advertised by Sierra Trading Post with a false or misleading reference price or false percentage

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 25 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1    and dollar amount discount have been harmed, have suffered an injury in fact and have lost

2    money or property.

3         92.    Sierra Trading Post continues to display false reference prices and false percentage

4    and dollar amount discounts to this day. There is no reason to believe that Sierra Trading Post

5    will voluntarily and permanently cease its unlawful practices.

6         93.    In acting toward Washington consumers and the general public in the manner

7    alleged herein, Sierra Trading Post acted with and was guilty of malice, fraud and/or oppression.

8    **VIII.   CLASS ACTION ALLEGATIONS**

9         94.    Plaintiff Chen brings this class-action lawsuit on behalf of himself and the

10   members of the following class (the "Class"):

11          **All persons who purchased in the State of Washington within the applicable**
       **limitations period from Sierra Trading Post, Inc., one or more products**

12          **which Sierra Trading Post, Inc., advertised or promoted by displaying or**
       **otherwise disseminating a reference price or discount.**

13

14        95.    Specifically excluded from the Class are each defendant, any entity in which a

15   defendant has a controlling interest or which has a controlling interest in a defendant, a

16   defendant's agents and employees and attorneys, the bench officers to whom this civil action is

17   assigned, and the members of each bench officer's staff and immediate family.

18        96.    *Numerosity.* Plaintiff does not know the exact number of Class members but is

19   informed and believes that the Class easily comprises 10,000 Washington State residents and

20   could, by the date of entry of Judgment, number in excess of 20,000 Washington State residents.

21   As such, Class members are so numerous that joinder of all members is impracticable.

22        97.    *Commonality and predominance.* Well-defined, nearly identical legal or factual

23   questions affect the members of the Class. These questions predominate over questions that might

24   affect individual Class members. These common questions include, but are not limited to, the

25   following:

26         a.    Sierra Trading Post's policies and actions regarding its use of reference

27   price advertising;

28         b.    The accuracy of Sierra Trading Post's advertised reference prices;

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 26 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1          c.      The accuracy of Sierra Trading Post's representations that it is a discounter
2    who primarily sells close-outs and excess inventory;

3          d.      Whether the pled conduct of Sierra Trading Post causes injury to the
4    business or property of consumers;

5          e.      Whether the pled conduct of Sierra Trading Post is injurious to the public
6    interest;

7          f.      Whether an advertised reference price constitutes a warranty;

8          g.      Whether Sierra Trading Post's Terms of Use (including the arbitration
9    provision contained therein) is a valid or enforceable contract;

10         h.      Whether Sierra Trading Post should be ordered to pay damages or disgorge
11   unjust enrichment; and

12         i.      Whether Sierra Trading Post should be enjoined from further engaging in
13   the misconduct alleged herein.

14         98.     The prosecution of separate actions by individual members of the Class would
15   create a risk of inconsistent or varying adjudications with respect to individual members of the
16   Class which would establish incompatible standards of conduct for the party opposing the class.

17         99.     The party opposing the Class has acted or refused to act on grounds generally
18   applicable to the Class, thereby making appropriate final injunctive relief or corresponding
19   declaratory relief with respect to the Class as a whole.

20         100.    *Typicality.* Plaintiff's claims are typical of Class members' claims. Plaintiff and
21   Class members all sustained injury as a result of Defendants' practices and schemes.

22         101.    *Adequacy.* Plaintiff will fairly and adequately protect Class members' interests.
23   Plaintiff has no interests antagonistic to Class members' interests. Plaintiff has retained counsel
24   who has considerable experience and success in prosecuting complex class action and consumer
25   protection cases.

26         102.    *Superiority.* A class action is the superior method for fairly and efficiently
27   adjudicating this controversy for the following reasons, without limitation:

28         a.      Class members' interests are relatively small compared to the burden and

CLASS ACTION COMPLAINT FOR DAMAGES                                    HATTIS & LUKACS
AND INJUNCTIVE AND DECLARATORY RELIEF                                 P O BOX 1645
PAGE 27 OF 37                                                         BELLEVUE, WA 98009
                                                                      (650) 980-1990

1  expense required to litigate each of their claims individually, so it would be impracticable for

2  Class members to seek individual redress for each defendant's illegal and deceptive conduct;

3          b.      Even if Class members could afford individual litigation, the court system

4  could not. Individual litigation creates the potential for inconsistent or contradictory judgments

5  and increases the delay and expense to all parties and to the court system. By contrast, a class

6  action presents far fewer management difficulties and provides the benefits of single adjudication,

7  economy of scale, and comprehensive supervision by a single court; and

8          c.      Plaintiff anticipates no unusual difficulties in managing this class action.

9

10                              **CAUSES OF ACTION**

11                                   **COUNT I**

12              **Violation of the Washington Consumer Protection Act**
                            **(RCW Chapter 19.86)**
13         **AGAINST DEFENDANT SIERRA TRADING POST, INC.**
                       **AND DEFENDANT DOES 1 TO 20**

14      103.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 102,

15  inclusive, as though alleged in full in this Count.

16      104.    The acts and omissions of Defendant Sierra Trading Post and Does 1 through 20,

17  inclusive, constitute unfair methods of competition and/or unfair or deceptive acts or practices

18  which directly or indirectly affect the people of the State of Washington and which have injured

19  Plaintiff Weimin Chen and the members of the Class in his or her or its business or property and

20  been the cause of said injury.

21      105.    Defendant Sierra Trading Post and Does 1 through 20, inclusive, engage in the

22  conduct of trade or commerce. For example, and without limitation, Defendant Sierra Trading

23  Post engages in the sale of assets (including the tangible personal property that the defendant

24  sells) and engaged in commerce directly or indirectly affecting the people of the State of

25  Washington.

26      106.    As a direct, substantial and/or proximate result of these violations, Plaintiff and the

27  members of the Class suffered injury to business or property. Plaintiff and the members of the

28  Class paid more than they otherwise would have paid for the products they purchased from the

CLASS ACTION COMPLAINT FOR DAMAGES                          HATTIS & LUKACS
AND INJUNCTIVE AND DECLARATORY RELIEF                       P.O. BOX 1645
PAGE 28 OF 37                                               BELLEVUE, WA 98009
                                                            (650) 980-1990

1   defendants and they bought more than they otherwise would have bought from the defendants.
2   The defendants' false reference pricing scheme fraudulently increased demand from consumers,
3   enabling them to charge higher prices than they otherwise could have charged.

4       107.   The acts and/or omissions of each defendant pled herein are injurious to the public
5   interest because said acts and/or omissions: violate a statute that incorporates Chapter 19.86 of the
6   Revised Code of Washington, violate a statute that contains a specific legislative declaration of
7   public interest impact, injures other persons, had the capacity to injure other persons, and/or has
8   the capacity to injure other persons.

9       108.   The unlawful acts and omissions pled herein were committed in the course of the
10  defendants' business. The unlawful acts and omissions pled herein were, are and continue to be
11  part of a pattern or generalized course of conduct. The unlawful acts and omissions pled herein
12  were repeatedly committed prior to the acts involving Plaintiff Chen. There is a real and
13  substantial potential for repetition of the defendants' conduct after the act involving Plaintiff
14  Chen; indeed, the conduct continues to this day with regard to many consumers. This Complaint
15  is not based upon a single transaction. The acts and omission of the defendants pled herein were
16  and are not reasonable in relation to the development and preservation of business.

17      109.   The defendants should be ordered to pay actual damages to Plaintiff and to the
18  members of the Class in an amount at least equal to all monies improperly accepted, received or
19  retained.

20      110.   The defendants should, either in the alternative or cumulatively or otherwise, be
21  ordered to disgorge or make restitution of all monies improperly accepted, received or retained.

22      111.   The balance of the equities favors the entry of permanent injunctive relief against
23  the defendants. Plaintiff, the members of the Class and the general public will be irreparably
24  harmed absent the entry of permanent injunctive relief against the defendants. Plaintiff, the
25  members of the Class and the general public lack an adequate remedy at law. A permanent
26  injunction against the defendants is in the public interest. The defendants' unlawful behavior is
27  ongoing as of the date of the filing of this pleading; absent the entry of a permanent injunction,

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 29 OF 37

HATTIS & LUKACS
P.O BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1    the defendants' unlawful behavior will not cease and, in the unlikely event that it voluntarily

2    ceases, is likely to reoccur.

3                                    **COUNT II**

4                               **Breach of Express Warranty**
                                      **(RCW 62A.2-313)**
5              **AGAINST DEFENDANT SIERRA TRADING POST, INC.,**
                           **AND DEFENDANT DOES 1 TO 20**
6
7        112.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 102,

8    inclusive, as though alleged in full in this Count.

         113.    The reference pricing advertised by Sierra Trading Post, as pled herein,
9
10   constitutes, for each product so advertised, an affirmation of fact or promise made by the seller to

11   the buyer which relates to the goods and becomes part of the basis of the bargain. The advertised

12   reference prices therefore create an express warranty that the goods shall conform to the

13   affirmation or promise.

         114.    The reference pricing advertised by Sierra Trading Post, as pled herein,
14
15   constitutes, for each product so advertised, a description of the goods which is made part of the

16   basis of the bargain. The advertised reference prices create an express warranty that the goods

17   shall conform to the description.

         115.    The advertised reference price for each product is not merely Sierra Trading Post's
18
19   opinion or commendation of the goods. Sierra Trading Post's reference prices constitute

20   affirmations of fact or promises, for example, but without limitation, that the same item was

21   previously sold by Sierra Trading Post at the reference price in an appropriate quantity for an

22   appropriate period of time, that the same item was sold for the reference price in an appropriate

23   quantity by a comparable retailer for an appropriate length of time, that the quality of the item

24   being sold matches the quality of the item whose reference price is being advertised, that the

25   references prices comply with Washington State law, and/or that the reference prices comply with

26   the rules of the Federal Trade Commission.

         116.    Plaintiff Chen and the members of the Class relied upon said express warranty
27
28   when purchasing products from Sierra Trading Post.

117.    Sierra Trading Post has breached these express warranties. Without limitation, for example, the former price or market price of each product purchased by Plaintiff Chen and the members of the Class was not the reference price stated by Sierra Trading Post in its corresponding advertising. For example, the reference price advertised by Sierra Trading Post for many products was not the former price or market price of that product, but was instead the price of a different and often higher quality product.

118.    Sierra Trading Post has breached its warranties, and, by those breaches, has harmed Mr. Chen and the members of the Class.

119.    By a letter dated July 27, 2018, Plaintiff Chen notified Sierra Trading Post in writing of the misconduct which constituted a breach of its express warranties. Sierra Trading Post did not rectify the situation.

120.    As a consequence of Sierra Trading Post's breach of these express warranties, Plaintiff Chen and the members of the Class has been harmed in his or her or its money, business or property, with the failure of the products to be as represented a substantial factor in causing the harm.

121.    The balance of the equities favors the entry of permanent injunctive relief against the defendants. Plaintiff, the members of the Class and the general public will be irreparably harmed absent the entry of permanent injunctive relief against the defendants. Plaintiff, the members of the Class and the general public lack an adequate remedy at law. A permanent injunction against the defendants is in the public interest. The defendants' unlawful behavior is ongoing as of the date of the filing of this pleading; absent the entry of a permanent injunction, the defendants' unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

## COUNT III

**Permanent Public Injunctive Relief**
**(RCW § 19.86.093)**
**AGAINST DEFENDANT SIERRA TRADING POST, INC.,**
**AND DEFENDANTS DOES 1 TO 20**

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 31 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1    122.   Plaintiff realleges and incorporates by reference Paragraphs 1 through 102,
2    inclusive, as though alleged in full in this Count.

3    123.   This is a private action in which an unfair or deceptive act or practice is alleged
4    under Section 19.86.020 of the Revised Code of Washington.

5    124.   The acts and omissions of Defendant Sierra Trading Post and Does 1 through 20,
6    inclusive, constitute unfair methods of competition and/or unfair or deceptive acts or practices
7    which directly or indirectly affect the people of the State of Washington and which have injured
8    Plaintiff Chen and the members of the Class in his or her or its business or property and been the
9    cause of said injury.

10   125.   Defendant Sierra Trading Post and Does 1 through 20, inclusive, engage in the
11   conduct of trade or commerce. For example, and without limitation, Defendant Sierra Trading
12   Post engages in the sale of assets (including the tangible personal property that the defendant
13   sells) and engaged in commerce directly or indirectly affecting the people of the State of
14   Washington.

15   126.   As a direct, substantial and/or proximate result of these violations, Plaintiff Chen
16   and the members of the Class suffered injury to business or property. Plaintiff Chen and the
17   members of the Class paid more than they otherwise would have paid for the products they
18   purchased from the defendants and they bought more than they otherwise would have bought
19   from the defendants. The defendants' false reference pricing scheme fraudulently increased
20   demand from consumers, enabling them to charge higher prices than they otherwise could have
21   charged.

22   127.   The acts and/or omissions of each defendant pled herein are injurious to the public
23   interest because said acts and/or omissions: violate a statute that incorporates Chapter 19.86 of the
24   Revised Code of Washington, violates a statute that contains a specific legislative declaration of
25   public interest impact, injures other persons, had the capacity to injure other persons, and/or has
26   the capacity to injure other persons.

27   128.   The unlawful acts and omissions pled herein were committed in the course of the
28   defendants' business. The unlawful acts and omissions pled herein were, are and continue to be

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 32 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1   part of a pattern or generalized course of conduct. The unlawful acts and omissions pled herein

2   were repeatedly committed prior to the acts involving Plaintiff Chen. There is a real and

3   substantial potential for repetition of the defendants' conduct after the act involving Plaintiff

4   Chen; indeed, the conduct continues to this day with regard to many consumers. This Complaint

5   is not based upon a single transaction.

6          129.    The defendants have an affirmative duty under the law to advertise their products

7   in a manner which is not false, deceptive or misleading. Plaintiff Chen and the rest of the public

8   should not be put to the burden of having to guess or take extraordinary efforts to ascertain which

9   discounts or other representations made by a defendant in its advertising are true or false, accurate

10  or misleading. Mr. Chen and the general public have the right to assume that all of the

11  defendant's advertising conforms with the law.

12         130.    If not enjoined by order of this Court, the defendants will or may continue to injure

13  Plaintiff Chen and consumers through the misconduct alleged herein. Without the entry of a

14  permanent injunction, the defendants' unlawful behavior is capable of repetition, re-occurrence or

15  increase.

16         131.    The balance of the equities favors the entry of permanent injunctive relief against

17  the defendants. Plaintiff Chen, the members of the Class and the general public will be irreparably

18  harmed absent the entry of permanent injunctive relief against the defendants. Plaintiff Chen, the

19  members of the Class and the general public lack an adequate remedy at law. A permanent

20  injunction against the defendants is in the public interest. The defendants' unlawful behavior is

21  ongoing as of the date of the filing of this pleading; absent the entry of a permanent injunction,

22  the defendants' unlawful behavior will not cease and, in the unlikely event that it voluntarily

23  ceases, is likely to reoccur or is otherwise capable of reoccurring.

24                                              **COUNT IV**

25                                 **Uniform Declaratory Judgments Act**
                                              **(RCW 7.24)**
26                   **AGAINST DEFENDANT SIERRA TRADING POST, INC.,**
                            **AND DEFENDANTS DOES 1 TO 20**
27

28

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 33 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1      132.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 102,

2    inclusive, as though alleged in full in this Count.

3      133.    Defendant Sierra Trading Post, Inc., contends on its website that its Terms of Use

4    (including an arbitration provision contained therein) constitutes a written contract which is

5    binding upon its customers.

6      134.    In stark contrast, Plaintiff and the members of the Class contend that Sierra

7    Trading Post's Terms of Use (including an arbitration provision contained therein) does not form

8    a contract with Plaintiff or with any member of the Class or, in the alternative, is not enforceable

9    in the event that the Terms of Use do form a contract.

10      135.    Sierra Trading Post's Terms of Use (including an arbitration provision contained

11    therein) do not form a contract or do not form an enforceable contract for, without limitation, the

12    following reasons:

13              a.    Customers who purchase from Sierra Trading Post retail stores do not

14    assent to and/or are not required to assent to the Terms of Use;

15              b.    Customers who purchase from the Sierra Trading Post mobile app as Guest

16    customers do not assent to and/or are not required to assent to the Terms of Use;

17              c.    Customers who purchase from the Sierra Trading Post mobile app as

18    Member customers do not assent to and/or are not required to assent to the Terms of Use;

19              d.    Customers who purchase from the Sierra Trading Post mobile website as

20    Guest customers do not assent to and/or are not required to assent to the Terms of Use;

21              e.    Customers who purchase from the Sierra Trading Post mobile website as

22    Member customers do not assent to and/or are not required to assent to the Terms of Use;

23              f.    The Sierra Trading Post Terms of Use did not contain an arbitration

24    provision prior to December 2016;

25              g.    Customers who purchase from the Sierra Trading Post desktop website do

26    not assent to and/or are not required to assent to the Terms of Use because, without limitation,

27    the "browsewrap" Terms of Use provided by Sierra Trading Post is inconspicuous, does not

28    provide actual or constructive notice, and would not be seen by the ordinary consumer exercising

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 34 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1   reasonable care.

2   136.   Plaintiff Chen and each member of the Class are persons interested under a

3   purported deed, will, written contract or other writing purportedly constituting a contract and/or

4   are persons whose rights, status or other legal relations are affected by a purported statute,

5   municipal ordinance, contract or franchise.

6   **PRAYER FOR RELIEF**

7   Plaintiff WEIMIN CHEN, on behalf of himself individually, on behalf of a class

8   composed of all others similarly situated and/or as a private attorney general seeking the

9   imposition of public injunctive relief, hereby respectfully requests that this Court order relief and

10   enter judgment against Defendant Sierra Trading Post, Inc., and Defendants Does 1 through 20,

11   inclusive, individually and/or jointly and/or severally and/or as otherwise appropriate, as follows:

12   A.   That the Court enter an order certifying the proposed Class and appointing

13   Plaintiff and his counsel to represent the Class;

14   B.   For damages, including actual damages to Plaintiff and the Class in an amount to

15   be determined at trial but which is more than $100,000 and which is estimated to be

16   approximately $23 million;

17   C.   For additional damages up to an amount not to exceed three times the actual

18   damages sustained by the Plaintiff and the members of the Class up to any applicable statutory

19   maximum;

20   D.   For disgorgement or restitution, including, without limitation, disgorgement of all

21   revenues, profits and/or unjust enrichment that each defendant obtained, directly or indirectly,

22   from Plaintiff and the members of the Class or otherwise as a result of the unlawful conduct

23   alleged herein;

24   E.   For nominal damages;

25   F.   For an order that each defendant be permanently enjoined from the unlawful

26   conduct alleged herein;

27   G.   For an order that each defendant must, on its websites and mobile apps and

28   advertising and all communications to the public, limit use of the terms "Compare at" or "retail

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 35 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1  price" to comparisons with the identical product and limit use of the terms "Compare Similar" or

2  "Comparable Value" to comparisons with a different product of similar quality — and that each

3  Defendant make the distinction clear as to each product being advertised using the term

4  "Compare at," "retail price," "Compare Similar," or "Comparable Value";

5      H.      For an order that each defendant is barred from using the terms "Closeout" and

6  "last year's model or color" to describe an item unless the item truly is a close-out or excess

7  inventory of last year's model or color which defendants acquired from another retailer or

8  manufacturer;

9      I.      For an order that each defendant is barred from advertising and representing that it

10  is a discounter who primarily sells close-outs and excess inventory when in fact that is not the

11  case;

12      J.      An order that, to the extent that the "Compare at $xx.xx" or any similar language

13  adjacent to or describing a reference price on each product page links to or launches a disclosure,

14  then the "Compare at $xx.xx" or any similar language shall, on each product page, be rendered in

15  a manner which makes it obvious to the ordinary consumer exercising reasonable care that the

16  language is a hyperlink;

17      K.      An order that each defendant maintain records for at least two years from the date

18  of advertisement of the source of the reference price for auditing purposes to ensure compliance

19  with the ordered injunctive relief;

20      L.      An order that the Court retain jurisdiction to police each defendants' compliance

21  with the permanent injunctive relief;

22      M.      For an order declaring that Plaintiff Chen and/or some or all members of the Class

23  are not bound by the Sierra Trading Post Terms of Use;

24      N.      For pre-judgment and/or post-judgment interest to the extent allowed by law;

25      O.      For attorneys' fees to the extent allowed by law;

26      P.      For costs to the extent allowed by law; and/or

27      Q.      Such other relief as the Court deems just and proper including, without limitation,

28  temporary or preliminary or permanent injunctive relief.

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND DECLARATORY RELIEF
PAGE 36 OF 37

HATTIS & LUKACS
P.O. BOX 1645
BELLEVUE, WA 98009
(650) 980-1990

1    DATED this 4th day of October, 2018.

2

3                                 Presented by:

4                                 HATTIS & LUKACS

5                                 By: _____

6                                 Daniel M. Hattis, WSBA #50428
                                  HATTIS & LUKACS
7                                 P.O. Box 1645
                                  Bellevue, WA 98009
8                                 Telephone: (650) 980-1990
                                  Facsimile: (425) 412-7171
9                                 Email: dan@hattislaw.com

10                                Attorneys for Plaintiff and the Proposed Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES                          HATTIS & LUKACS
AND INJUNCTIVE AND DECLARATORY RELIEF                        P.O. BOX 1645
PAGE 37 OF 37                                                BELLEVUE, WA 98009
                                                            (650) 980-1990

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| Weimin Chen | NO.    18-2-25019-6 SEA |
| Plaintiff(s). | ORDER SETTING CIVIL CASE SCHEDULE |
| vs. | |
| | ASSIGNED JUDGE:  Ruhl, John, Dept. 8 |
| Sierra Trading Post, Inc. et al. | |
| Respondent(s) | FILED DATE: 10/5/2018 |
| | TRIAL DATE: 10/7/2019 |
| | SCOMIS CODE: *ORSCS |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this Order Setting Case Schedule (*Schedule*) on the Defendant(s) along with the *Summons and Complaint/Petition*. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

"I understand that I am required to give a copy of these documents to all parties in this case."

Daniel Hattis

| | |
|---|---|
| PRINT NAME | SIGN NAME |

I. NOTICES  (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of $240 must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

If you miss your scheduled Trial Date, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule if the case is subject to mandatory arbitration and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. Any party filing a Statement must pay a $220 arbitration fee. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.

## II. CASE SCHEDULE

| √ | CASE EVENTS | DATE |
|---|---|---|
|  | Case Filed and Schedule Issued. | 10/5/2018 |
| √ | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR2.1(a) and Notices on page 2]. **$220 Arbitration fee must be paid** | 3/15/2019 |
| √ | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [See KCLCR 4.2(a) and Notices on page 2] | 3/15/2019 |
|  | **DEADLINE** for Hearing Motions to Change Case Assignment Area [KCLCR 82(e)] | 3/29/2019 |
|  | **DEADLINE** for Disclosure of Possible Primary Witnesses [See KCLCR 26(k)] | 5/6/2019 |
|  | **DEADLINE** for Disclosure of Possible Additional Witnesses [KCLCR 26(k)] | 6/17/2019 |
|  | **DEADLINE** for Jury Demand [See KCLCR 38(b)(2)] | 7/1/2019 |
|  | **DEADLINE** for Change in Trial Date [See KCLCR 40(e)(2)] | 7/1/2019 |
|  | **DEADLINE** for Discovery Cutoff [See KCLCR 37(g)] | 8/19/2019 |
|  | **DEADLINE** for Engaging in Alternative Dispute Resolution [See KCLCR16(b)] | 9/9/2019 |
|  | **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLCR 4(j)] | 9/16/2019 |
| √ | **DEADLINE** to file Joint Confirmation of Trial Readiness [See KCLCR 16(a)(1)] | 9/16/2019 |
|  | **DEADLINE** for Hearing Dispositive Pretrial Motions [See KCLCR 56;CR56] | 9/23/2019 |
| √ | Joint Statement of Evidence [See KCLCR 4(k)] | 9/30/2019 |
|  | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusion of Law with the Clerk) | 9/30/2019 |
|  | Trial Date [See KCLCR 40] | 10/7/2019 |

The √ indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED:   10/5/2018

_____
PRESIDING JUDGE

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:** Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

### A. Joint Confirmation regarding Trial Readiness Report
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

### C. Trial
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the

Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:** Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time. However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule. In addition, discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B. Original Documents/Working Copies/ Filing of Documents:** All original documents must be filed with the Clerk's Office. Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application. Pre-registration to accept e-service is required. E-Service generates a record of service document that can be e-filed. Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. **Do not file the original of the proposed order with the Clerk of the Court.** Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order. The court may distribute orders electronically. Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the Ex Parte and Probate Department.** Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte and Probate Department. **If final order and/or formal proof are entered in the Ex Parte and Probate Department,** counsel is responsible for providing the assigned judge with a copy.

**C. Form**
Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

**PRESIDING JUDGE**

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| Weimin Chen | NO. 18-2-25019-6 SEA |
| VS | |
| Sierra Trading Post, Inc. et al. | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

## CAUSE OF ACTION

**(TTO) -**      TORT, OTHER (MSC 2)

## AREA DESIGNATION

**SEATTLE -**   Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.