HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WEIMIN CHEN, on behalf of himself and all others similarly situated,

Plaintiff,

v.

SIERRA TRADING POST, INC., and DOES 1-20 inclusive,

Defendants.

Case No. 2:18-cv-1581-RAJ

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

## I. INTRODUCTION

This matter is before the Court on Defendant Sierra Trading Post Inc.'s motion to compel arbitration ("Motion"). Dkt. # 17. For the reasons below, the Court **GRANTS** the Motion.

## II. BACKGROUND

Defendant Sierra Trading Post, Inc. ("STP") is an off-price Internet retailer of brand-name outdoor gear, family apparel, footwear, sporting goods, and home fashions. Dkt. # 1-1, ¶ 2. On its website, STP lists comparison prices from other online or brick-and-mortar retailers for the same items it offers for sale. *Id.*, ¶¶ 3, 4. Plaintiff alleges that most of the comparison prices are false, deceptive, or misleading and brings claims related to items he purchased on STP's website between December 2010 and January 2018. *Id.*, ¶¶ 4, 5. He purports to act on behalf of a putative class of purchasers in Washington. *Id.*,

ORDER – 1

¶ 94.

STP contends that Chen's use of its website, including any purchases, are governed by STP's Terms of Use ("TOU"). Dkt. # 17. The TOU contains an arbitration agreement which states, in relevant part:

> You and we agree that we will resolve any disputes between us through binding and final arbitration instead of through court proceedings. You and we hereby waive any right to a jury trial of any Claim. All controversies, claims, counterclaims, or other disputes arising between you and us relating to these Terms of Use or the Site (each a "Claim") shall be submitted for binding arbitration in accordance with the Rules of the American Arbitration Association ("AAA Rules"). The arbitration will be heard and determined by a single arbitrator. The arbitrator's decision in any such arbitration will be final and binding upon the parties and may be enforced in any court of competent jurisdiction. The parties agree that the arbitration will be kept confidential and that the existence of the proceeding and any element of it (including, without limitation, any pleadings, briefs or other documents submitted or exchanged and any testimony or other oral submissions and awards) will not be disclosed beyond the arbitration proceedings, except as may lawfully be required in judicial proceedings relating to the arbitration or by applicable disclosure rules and regulations of securities regulatory authorities or other governmental agencies.
>
> ….

Dkt. # 19-1.

Chen states that he never agreed to be bound by the TOU and never saw it before making any purchases. Dkt. # 23, ¶¶ 4-5. STP nonetheless claims that Chen would have had notice of the TOU via the website's "Checkout" page for purchases he made in October 2017 and January 2018.[1] Dkt. # 19, ¶ 3. Specifically, a few lines below the "Place my

---

[1] Chen disputes whether notice of the TOU has ever appeared on STP's website when viewed from a mobile device. Dkt. # 22 at 8 n. 1. However, because he presents no evidence that he purchased any items using his mobile device, the Court will not consider such evidence in relation to this Motion. *See* Fed. R. Evid. 401.

ORDER – 2

order" button, reads, "By placing your order you agree to our Terms & Privacy Policy" (hereinafter, the "Consent line").[2] Dkt. # 25-1. The Consent line contains hyperlinks to STP's TOU and Privacy Policy. Dkt. # 19, ¶ 3; Dkt. # 25-1. STP now moves to compel arbitration and stay the action based on the TOU's arbitration provision. Dkt. # 17.

### III. DISCUSSION

Under the Federal Arbitration Act ("FAA"), a court is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotations omitted). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000); *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 483 (1989).

**A. Whether a valid agreement to arbitrate exists**

The parties principally dispute whether a valid agreement to arbitrate exists. Courts make this determination by reference to ordinary state law contract principles. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Because the parties must manifest their mutual assent to form a valid contract under Washington law, the Court starts its analysis there.[3] *See Keystone Land & Dev. Co. v.*

---

[2] Chen moves to strike paragraph 3 of the Declaration of Caitlin Kobelski, which contains an alleged cropped image from STP's "Checkout" page. Dkt. # 22 at 10. The Court declines to strike the paragraph because the proximity of the Consent line to the "Place my order" button is relevant to the dispute. Fed. R. Evid. 401. The Court also considers relevant evidence presented by Chen concerning the full layout of the "Checkout" page. *See, e.g.*, Dkt. # 25-1 at 2.

[3] As the parties acknowledge, the TOU contains a choice of law provision which states that the terms therein "are governed by and shall be construed in accordance with the laws of The Commonwealth of Massachusetts, without regard to any conflict of law provisions …." Dkt. # 19-1 at 5. However, under Washington law, where a contract designates another state's law, Washington law still governs unless there is an "actual conflict." *Seizer v. Sessions*, 940 P.2d 261, 254 (Wash. 1997) (where the laws or interests of concerned states do not conflict, the presumptive local law applies). There does not appear to be a conflict between Washington and Massachusetts regarding contract formation. *See, e.g.*,

ORDER – 3

*Xerox Corp.*, 94 P.3d 945 (Wash. App. 2004); *see also Hauenstein v. Softwrap Ltd.*, No. C07-0572-MJP, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (applying Washington contract law). To determine mutual assent, Washington courts follow the objective manifestation theory of contracts, meaning they look to the reasonable meaning of the contract language instead of the subjective intent of the parties. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). In the context of an electronic consumer transaction, the occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of the merchant's terms of service agreement. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). As indicated above, STP claims that Chen had notice of the TOU on its "Checkout" page on October 2, 2017 and January 19, 2018. Dkt. # 19, ¶ 3 at 2. Chen declares that he never saw the TOU when making any purchases on the website. Dkt. # 23, ¶ 5.

Typically, notice of an online merchant's terms either occurs through "clickwrap" (or "click-through") agreements, which require website users to click on an "I agree" box after being presented with a list of terms and conditions of use; or "browsewrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen. *Nguyen*, 763 F.3d at 1176 ("The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists.") (quoting *Be In, Inc. v. Google Inc.*, No. 12–CV–03373–LHK, 2013 WL 5568706, at *6 (N.D. Cal. Oct. 9, 2013)). Based on the evidence presented, the Court finds that STP employed a "modified clickwrap" agreement on its website when Chen made the October 2017 and January 2018 purchases. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (finding Facebook's terms of

---

*Nortek, Inc. v. Liberty Mut. Ins. Co.*, 843 N.E.2d 706, 714 (Mass. App. Ct. 2006) (noting that to create a binding agreement there must be an objective manifestation of mutual assent).

ORDER – 4

use fell somewhere in between a pure browsewrap agreement and a pure clickwrap agreement because, although users were required to take an affirmative action by clicking "Sign Up" to agree to the terms of use, the terms were available only via a hyperlink below the "Sign Up" button). To meet the reasonable notice threshold, the user must have actual or constructive notice of the terms of service on the website. *Nguyen*, 763 F.3d at 1176. Constructive notice occurs when the consumer has inquiry notice of the terms of service, like a hyperlinked alert, and takes an affirmative action to demonstrate assent to them. *Id.*

Chen's main argument is that the Consent line was too inconspicuously placed on STP's website to have provided inquiry notice of the TOU. Dkt. # 22 at 22. Therefore, he claims that he did not assent to its terms. *Id.* Based on the evidence provided to the Court, the Consent line is near, but not directly adjacent to the "Place my order" button. *See* Dkt. # 19, ¶ 3; Dkt. # 25-1. Several lines of text in the same font and size as the Consent line fall in between, including (i) a "Savings line," which indicates how much the user saved by shopping with STP instead of with another retailer; and (ii) one or two "clickwrap" agreements concerning future email alerts from STP. *Id.*

The relevant law shows that courts have not been uniform in their treatment of "clickwrap" or "browsewrap" agreements. For example, courts have been more amenable to enforcing a merchant's terms of use when the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound. *Nguyen*, 763 F.3d at 1177; *see also, e.g.*, *Rodriguez v. Experian Serv. Corp.*, No. CV 15–3553–R, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015) (enforcing arbitration clause contained within terms of use where "Website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgement, which stated 'By clicking the button above ... you agree to our Terms of Use,' " which were hyperlinked); *Crawford v. Beachbody*, *LLC*, No. 14cv1583–GPC, 2014 WL 6606563, at *2–3 (S.D. Cal. Nov. 5, 2014) (enforcing forum selection clause contained within terms and conditions of website where, at the final page of placing an order, plaintiff was required to click on "Place

ORDER – 5

Order" and language on the same page stated that "by clicking Place Order below, you are agreeing" to the website's terms and conditions, which were hyperlinked); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them"); *see also Riensche v. Cingular Wireless*, LLC, No. C06-1325Z, 2006 WL 3827477, at *1 (W.D. Wash. 2006) (concluding that plaintiff assented to arbitration clause when he indicated his agreement to the terms of service online).

At the same time, courts have been unwilling to enforce clickwrap or "modified clickwrap" agreements where certain aspects of the merchant's website, such as the location and appearance of the disclosure statement, the actual terms of the agreement, and the appearance and location of the hyperlink relative to the agreement, prevent a reasonable consumer from being on constructive notice. *Nguyen*, 763 F.3d at 1173 ("Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement."); *see also McKee v. Audible, Inc.*, CV 17–1941–GW, 2017 WL 4685039 (C.D. Cal. July 17, 2017) (denying motion to compel where disclosure was only visible if user scrolled beyond "Start Now" button but was not required to do so); *Metter v. Uber Technologies, Inc.*, No. 16-cv-06652-RS, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017) (same).

In reviewing the "Checkout" page at issue here, the Court finds Chen had constructive notice of the TOU. Notably, the user does not need to scroll beyond the "Place my Order" button to find the Consent line, which explicitly states that the user agrees to the "Terms" by placing the purchase order. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) (noting that the language "[b]y creating an Uber account, you agree" is a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms). Moreover,

ORDER – 6

the word "Term" in the Consent line, which hyperlinks directly to the TOU, is both capitalized and underlined and thus distinguishable from the surrounding text. *See Fteja*, 841 F.Supp.2d at 839 (the use of a hyperlinked term prompts the consumer to examine terms of sale that are located somewhere else); *see also Friedman v. Guthy-Renker LLC*, No. 2:14–cv–06009–ODW, 2015 WL 857800, at *5 (C.D. Cal. Feb. 27, 2015) (the non-capitalization of the common noun "terms" weighed against finding the defendant's website provided inquiry notice of terms and conditions located on separate webpage). Under these circumstances, the Court finds Chen had inquiry notice of the TOU. Because Chen assented to the terms by clicking the "Place my order" button on October 2, 2017 and January 19, 2018, there is a valid agreement to arbitrate.

### B.     Whether the arbitration agreement encompasses the current dispute

When a valid arbitration agreement encompasses the disagreement at hand, the FAA mandates "that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The party resisting arbitration bears the burden of showing that the agreement does not cover the claims at issue." *Peters v. Amazon Servs*. LLC, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013).

As an initial matter, the Court must address STP's contention that the arbitrability of Chen's claims is itself a question reserved for arbitration. Dkt. # 17 at 8. "Whether a dispute as to arbitrability should be resolved by the court or an arbitrator depends upon whether the parties agreed to delegate that power to the arbitrator." *Brennan v. Opus Bank*, No. 2:13–cv–00094–RSM, 2013 WL 2445430, at *4 (W.D. Wash. Jun. 5, 2013). "Unless parties 'clearly and unmistakably' delegate that power to an arbitrator, arbitrability is for the court, not the arbitrator, to decide." *Id*. (quoting *First Options of Chicago, Inc.*, 514 U.S. at 943-44). STP argues that the TOU's incorporation the AAA's model rules for arbitration shows that the parties intended to delegate several gateway questions to an

ORDER – 7

arbitrator. Dkt. # 17 at 8. Chen disagrees. Dkt. # 22 at 27.

Generally, "incorporation of the AAA rules constitutes 'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (explaining that "one of [the AAA rules] provides that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the...validity of the arbitration agreement'"); *accord Oracle Am., Inc. v. Myraid Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). However, as Chen points out, the Ninth Circuit's holding was limited to disputes involving sophisticated parties and has not been universally adopted in disputes involving at least one unsophisticated party. Dkt. # 22 at 27 (citing *Ingalls v. Spotify USA, Inc.*, No. 16-cv-03533-WHA, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016)).

Ultimately, the greater weight of authority since *Brennan*, including within this District, concludes that *Brennan*'s holding also applies to disputes involving non-sophisticated parties. *See, e.g.*, *Schmidt v. Samsung Electronics Am., Inc.*, NO. C16-1725-JCC, 2017 WL 2289035, at *6 (W.D. Wash. May 25, 2017) (incorporation of AAA rules within consumer transaction was 'clear and unmistakable' evidence of intent to delegate the arbitrability question to an arbitrator); *Cordas v. Uber Technologies, Inc.*, 228 F.Supp.3d 985, 991-92 (N.D. Cal. 2017) (same); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 974 (N.D. Cal. 2015) (noting cases that conclude less-sophisticated parties do not clearly and unmistakably delegate arbitrability by incorporation of AAA rules are "at odds with the prevailing trend of case law"); *see also Brennan*, 796 F.3d at 1130 (acknowledging that the "vast majority of the circuits" have not limited similar holdings to sophisticated parties or commercial contracts). Until the Ninth Circuit holds otherwise, the Court echoes the other decisions concluding that *Brennan* suggests the enforceability of arbitrability

ORDER – 8

delegation via incorporation of the AAA rules, even where unsophisticated parties are involved.[4]  Accordingly, the Court finds that the issue of arbitrability is delegated to the arbitrator and will not address Chen's remaining contentions concerning the scope of the agreement.  STP's Motion is **GRANTED**.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** STP's motion to compel arbitration.  Dkt. # 17.  The case is hereby stayed, pending completion of the arbitration.  The Clerk is directed to close the file for administrative purposes.  It may be reopened for such additional proceedings as may be appropriate and necessary upon conclusion of the arbitration.

DATED this 6th day of August, 2019.

The Honorable Richard A. Jones
United States District Judge

---

[4] The only way to circumvent this rule is by showing that the agreement to arbitrate arbitrability is itself unconscionable.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) ("Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement to delegate arbitrability—the Delegation Provision—is itself unconscionable.").  Chen makes no such arguments here.

ORDER – 9